MONTGOMERY ELEVATOR
COMPANY, INC.,
Plaintiff,

v.

NUTMEG INSURANCE COMPANY,
Defendant.

No. Civ.A. G–98–104.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 12, 1998.

---

A Craig Eiland, Attorney at Law, Galveston, TX, for Montgomery Elevator Company, Inc., plaintiff.

Byron Keith Barclay, Phillips & Akers, Houston, TX, for Nutmeg Insurance Company, defendant.

### ORDER

KENT, District Judge.

Plaintiff Montgomery Elevator Company, Inc., seeks to recover funds expended and expenses incurred in defending a personal injury suit. Now before the Court are Defendant's Motion for Summary Judgment filed September 2, 1998 and Plaintiff's Motion for Summary Judgment filed September 15, 1998. For the reasons set forth below, Plaintiff's Motion is **GRANTED** and Defendant's Motion is **DENIED.**

### I. Factual and Procedural Background

On or about October 30, 1990, Plaintiff Montgomery Elevator, Inc. ("Montgomery") entered into an elevator maintenance agreement with Hermann Hospital. In December of 1993, Rex Timberlake was injured while on a Hermann Hospital elevator serviced by Montgomery. Timberlake sued Montgomery in Harris County District Court. Montgomery ultimately paid Timberlake $150,000 to settle the case. Under an Excess General Liability Insurance Policy held by Hermann Hospital and issued by Defendant Nutmeg Insurance Co. ("Nutmeg"), Montgomery believed it was entitled to defense and indemnification by Nutmeg. Nutmeg refused to defend or indemnify Montgomery in the Timberlake suit and now denies that the Hermann Hospital policy covered Montgomery. Montgomery initially filed suit against Hermann Hospital, but subsequently agreed to non-suit the case in favor of suing Nutmeg.

### II. Analysis

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Montgomery has provided the Court with a copy of an elevator maintenance agreement allegedly entered into between Montgomery and Hermann Hospital. The contract states that Hermann Hospital shall:

> ... indemnify, protect and save harmless Montgomery Elevator Company from and against liabilities, losses and claims of any kind or nature imposed on, incurred by, or asserted against Montgomery Elevator Company arising out of the active or passive negligence of Montgomery Elevator.

Both Montgomery and Nutmeg have also provided the Court with an identical copy of Hermann Hospital's Excess General Liability Insurance Policy issued by Nutmeg. The policy requires Nutmeg to "pay ... the ultimate net loss ... because of ... bodily injury ... during the policy period ...." and expressly includes "damages [a]ssumed [by Hermann Hospital] in a contract or agreement that is an insured contract." An insured contract is then defined to specifically include "[a]n elevator maintenance agreement."

Nutmeg does not dispute that the language of these two contracts subjects it to liability. Instead, Nutmeg argues that the indemnity language was not included in the elevator maintenance agreement between Hermann Hospital and Montgomery. Alternatively, Nutmeg argues that if the language was included it was not conspicuous enough to meet the requirements imposed by Texas law. While the Court recognizes that it is often proper to argue alternative theories, the assertion of these two diametrically opposed factual theories strains Nutmeg's credibility and weakens its defense exponentially. Either the indemnity language was included or it was not included; even Nutmeg cannot have its cake and eat it too. Accordingly, the Court views all of Nutmeg's allegations and evidence with an extremely skeptical eye.

■ In support of its theory that the indemnity language was not included in the elevator maintenance agreement, Nutmeg relies primarily on the affidavit of Arthur Spirakes—a former employee of Hermann Hospital who was the authorized purchasing agent at the relevant time. Mr. Spirakes signature appears on the last page of the elevator maintenance agreement supplied by Montgomery. Mr. Spirakes does not dispute the authenticity of his signature, but he claims that the indemnity language, which is found on a preceding page, was not included in the contract when he signed it. In other words, Nutmeg accuses Montgomery of fraudulently attaching an additional page to the contract or substituting a page containing the indemnity language.

Normally Mr. Spirakes testimony would be sufficient to create a material issue of fact precluding summary judgment. However, Nutmeg's failure to supply Montgomery or the Court with the version of the contract that it alleges was signed by Mr. Spirakes negates his credibility. Presumably Hermann Hospital kept a copy of the original elevator maintenance agreement, and thus it should have been a simple matter for Nutmeg to produce a copy of the agreement in response to Montgomery's repeated discovery requests. Nutmeg's conspicuous failure to produce a copy of what it claims was the original contract, or to provide an explanation for its failure to do so, leads the Court to conclude that no such contract exists. This conclusion is bolstered by other evidence including two prior, virtually identical elevator maintenance agreements entered into between Hermann and Nutmeg which contain the exact indemnity language at issue here. In light of the conflicting factual theories asserted by Nutmeg and the absence of credible evidence to support its position, Nutmeg has failed to raise a genuine issue of material fact as to the existence of any version of the contract other than the one provided by Montgomery. The Court finds that twelve reasonable jurors could not differ about this conclusion and thus, as a matter of law, the elevator maintenance contract provided by Montgomery was the one entered into between the parties.

■ After boldly accusing Montgomery of fraud, Nutmeg completely changes tacks, arguing that the indemnity language was included but did not meet the requirement for conspicuousness under Texas law. This argument is utterly preposterous and clearly demonstrates that Nutmeg has been spending too much time with the eggnog. Hermann Hospital is no mom and pop shop, but rather an international, multi-departmented

health complex that provides valuable research and medical services to an enormous community of patients. The notion that the purchasing agent of such an entity should not be held responsible for reading the five substantive pages of an elevator maintenance agreement entered into with another commercial entity is ludicrous. Even if the Court were to allow for such a possibility, Nutmeg's brief utterly fails to identify how the indemnity provision fails any test for conspicuousness under Texas law. Perhaps this is because there is no such argument to be made. The language appeared on the face of a fairly short commercial contract and was not hidden under a misleading heading nor buried in a paragraph addressing dissimilar contractual issues. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505 (Tex.1993); *Enserch Corp. v. Parker*, 794 S.W.2d 2 (Tex.1990). Furthermore, the language was identified by Hermann's purchasing agent who signed the two prior, virtually identical agreements entered into between Hermann Hospital and Montgomery. The indemnity language was marked through in the two previous agreements presumably as a result of negotiations between the parties that, for whatever reason, did not occur with respect to the agreement at issue.

■ Nutmeg makes one final plea for a favorable ruling that is perhaps the most laughable of all Nutmeg's assertions. Nutmeg asks the Court to relieve it of liability because it did not approve in writing Montgomery's settlement of the Timberlake claims. After completely ignoring Montgomery's numerous requests by telephone and letter for a determination as to the insurance coverage provided under the Hermann Hospital policy, Nutmeg now asks the Court to reward it for its own inaction. If this Court adopted such a ridiculous argument, every insurance company could escape liability simply by ignoring potential claimants. The audacity of Nutmeg borders on being sanctionable.

### III.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Motion for Summary Judgment is **DENIED**. Nutmeg has adduced no competent summary judgment evidence which refutes Montgomery's proof that it was entitled to defense and indemnification by Nutmeg. Judgment is therefore entered for Plaintiff for $150,000, the amount paid by Montgomery to settle the Timberlake lawsuit. Additionally, Plaintiff is **ORDERED** to submit a motion detailing any further relief to which Plaintiff feels it is entitled including expenses, pre-judgment interest, and attorney's fees along with supporting documentation in accordance with the guidelines set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). Plaintiff must submit the motion and a proposed Final Judgment within 40 days of the date of this Order. Defendant will have 20 days to respond. The Court will then resolve all outstanding claims for damages and issue a Final Judgment.

**IT IS SO ORDERED.**